In re BRINKER.

(District Court, W. D. New York. February 19, 1904.)

No. 719.

1. BANKRUPTCY—TAXES ON MORTGAGED PROPERTY—RIGHTS OF PURCHASER AT FORECLOSURE SALE.

A purchaser at foreclosure sale, under a decree of a state court, of real estate of a bankrupt, with knowledge that there were tax liens thereon, and that the trustee in bankruptcy was insisting that the property be sold subject to such liens, or that the taxes be paid from the proceeds, acquires no equity which requires the bankruptcy court to direct the payment of the taxes from the personal estate of the bankrupt.

2. SAME—SALE OF PROPERTY FOR TAXES—RIGHTS OF PURCHASER.

A city filed a claim against the estate of a bankrupt for taxes due on real estate of the bankrupt which had been sold in foreclosure proceedings, and on which, under the state statute, the taxes were a lien. While the claim was pending, the city sold the property for the taxes as provided by statute. *Held* that, the purchaser being a volunteer, the doctrine of equitable subrogation had no application to transfer to him any right of the city to preferential payment of the taxes from the personal estate of the bankrupt, instead of looking to the property on which the taxes were a lien.

3. SAME—REQUIRING PAYMENT OF TAXES BY TRUSTEE—RIGHTS OF MORTGAGEE.

Where mortgaged real estate of a bankrupt subject to a paramount lien for taxes is sold in a foreclosure suit for less than the mortgage debt, Bankr. Act July 1, 1898, c. 541, § 64a, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], which provides that a trustee shall pay all taxes, does not require the payment of such taxes from the bankrupt's personal estate, the result of which would be to give a preference to that extent over the general creditors; the municipalities to whom the taxes are due being secured, in any event, by their lien on the property.

In Bankruptcy. On review of decision of referee.

George C. Riley, for trustee.

Frank Rumsey, for county of Erie and Benjamin W. Carskaddon.

Percy W. Lansdowne, for city of Buffalo.

HAZEL, District Judge. The question for decision arises from facts which, so far as material, are as follows: Certain real estate of the bankrupt, situated in the city of Buffalo, incumbered by two mortgage liens, was sold at foreclosure sale to Benjamin W. Carskaddon on the 5th day of February, 1902. Adjudication in bankruptcy was made September 24, 1901. There were tax liens for taxes assessed upon the mortgaged premises. The foreclosure sale was free and clear of all taxes. The trustee of the bankrupt was a party defendant to the foreclosure proceedings, and at the sale demanded that the property be sold subject to the tax liens. This the referee refused to do. Thereupon application was made by the trustee to the New York Supreme Court, in which the foreclosure action was pending, to require such payment out of the proceeds of the sale. The state court denied the application on the ground that the personal estate of the bankrupt was primarily subject to the payment of tax liens. On appeal to the Appellate Division of the Fourth Department, New York, this decision was sustained. It was the duty of the trustee to collect and

reduce to money the assets of the bankrupt. At the time of the mortgage foreclosure, the trustee stood in the position of the bankrupt and the general creditors, demanding a sale of the property subject to incumbrances for taxes, or payment from the proceeds of the sale if such payment could legally be demanded. It undoubtedly was his duty to effect a sale of the bankrupt's realty at the best possible advantage to the bankrupt estate, and, if possible, to enhance the value of the assets. Whatever equities exist in favor of the purchaser at the foreclosure sale arose at that time, and it is difficult to perceive how any disposition can be inequitable towards the purchaser, Carskaddon, who was apprised of the tax liens in controversy, of the prior sales of said property because of nonpayment of taxes, and the claim of the trustee. The question, therefore, of whether the taxes were legally due and owing, in the sense that they should be allowed priority here, was an open one, for subsequent determination by the bankruptcy court. The city, in connection with the purchaser, now demands payment of these from the estate. Reliance by the purchaser for the payment of the tax liens by the trustee under the provisions of section 64a of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), is not sufficient to compel a decision that in equity, as well as under this section, the taxes should have priority from the bankrupt estate. The inferences deducible from the evidence are that Carskaddon bought the mortgaged property at the sale, knowing the exact situation as to these taxes. The undisputed evidence shows that there are outstanding at this time upon the tax records of the county of Erie and of the city of Buffalo, as taxes and assessments, the following sums: County tax for 1899, $194.64; county tax for 1900, $144.72; county tax for 1901, $172.64; city tax for 1901, $616.87; and local assessment, $378.05. On February 20, 1902, more than two weeks after the foreclosure sale, claims were presented to the referee in bankruptcy by the county and municipal authorities, and an application was made for an order directing the trustee to pay the tax liens above enumerated. It further appears by the record that after the foreclosure sale, and after claims for tax liens were filed under section 64a, as above stated, the real estate was sold by the county to one Wadhams for nonpayment of taxes for the year 1900, and thereafter was also sold by the municipality to one Wiltsie for nonpayment of the city taxes and assessment heretofore set out. Such sales were made in conformity with statutory requirements providing for the collection of taxes. The city and county therefore have no real interest in the controversy. They are secure. The only result of an affirmance of the referee will be an ostensible allowance to the city and county, which will redound, not to their benefit, but to that of an individual at the expense of the general creditors. Apparently the method to effect the object of the statute was strictly followed. The referee, in his decision, allowed a portion of the claims which were disputed, namely, the county taxes for the year 1900, and city taxes for the year 1901, amounting in the aggregate to $784.68, and disallowed the remainder. According to the referee, the purchasers of the tax sales by operation of law became equitable assignees, and were subrogated to the legal rights and privileges of the

taxing body. This proposition is based upon the premise that there could be no relinquishment of liens for taxes by conditional sales of the property affected, for the reason that the statutes of the state under which the real estate was sold were mandatory, and hence the status quo was fixed and determined when the claims were filed in the bankruptcy court, which, as has been stated, was subsequent to the said foreclosure sale. It is further maintained that the purchasers at the tax-lien sales were merely holders of tax certificates, and accordingly obtained only a defeasible title, the owner reserving the right of redemption within a specified time, and further that, in legal effect, the taxing bodies became trustees for the purchasers. This assertion, it is thought, finds support in the statutes which authorize the county and city to subsequently receive the amount of unpaid taxes, together with costs and expenses, from the delinquent, should he elect to redeem the property sold within the time limited by law.

I do not assent to the conclusions found. A precedent for holding differently where the facts are as here may be found in In re Veitch (D. C.) 101 Fed. 251, where Judge Townsend decided that "taxes should not be paid by the trustee, where such a payment would operate to the advantage of a third party against another; the taxes being, in any event, secured." Nor does the principle of the right of equitable subrogation have application here. Acer v. Hotchkiss, 97 N. Y. 396. The purchasers of the tax certificates were not obliged to bid in the property at the tax sale in order to protect themselves. They were not mortgagees or judgment creditors, or even creditors, of the bankrupt. They are third parties to the transaction, pure and simple, and accordingly cannot invoke the aid of the doctrine of subrogation. Furthermore, none of the purchasers of the tax certificates are parties to this proceeding. Evidently they do not rely upon the redemption of the property by the trustee in bankruptcy, or the payment of the taxes as a preferred claim. The taxes were paid by them in full, and they hold the property taxed as security. What further interest has the county and city in the real estate in question? No other or different taxes are due and owing them from the estate of the bankrupt. The remedy which the county and city have elected for the collection of the tax has resulted in absolutely wiping out the unpaid liens for taxes, and in securing, if not absolutely paying, their claim. There is no sound reason why the county and city should longer be regarded as creditors entitled to a priority of payment. The bankruptcy court should, whenever possible, so marshal the assets of the estate as to secure equitable distribution to all. In re Veitch, supra. The direct result of payment of the purchase by Wadhams and Wiltsie at the time of the sale for unpaid taxes deprived the municipality and county of further interest in the controversy. A different question would arise if, for example, the county and city had been obliged to bid in the real estate at the sale, and had, therefore, a defeasible title to it. In a recent analogous case (In re Stalker [D. C.] 123 Fed. 961) decided by this court, the following was said:

"The significance of section 64a, as applied to a municipality, is that a claim for taxes is paramount to all other claims, because of the pecuniary needs and requirements of the municipality, and so as to relieve the general taxpayers

from the payment of an unfair proportion of taxes. Some seemingly unjust features may be presented by the application of the stringent provisions of the bankrupt act referred to, but, as the law is plain and singularly free from ambiguity, it is obvious that Congress intended that the statute should be strictly construed and applied, unless the facts disclose unjust or prejudicial results."

Such being the law, it is clear that third parties, bidders at a tax sale, holding tax certificates for their security, are not entitled to relief out of the assets of the bankrupt. Much less is the purchaser at a foreclosure sale, having full knowledge of the tax liens, entitled to demand relief by the payment of taxes ostensibly to municipalities, but which in reality inures solely to his benefit, and when it may fairly be assumed that he bid in the incumbered property subject to existing liens for unpaid taxes and assessments.

I conclude that no priority of payment should be allowed on account of tax liens, and, for the reasons stated, the conclusion of the referee as to the tax claims allowed is reversed, and sustained as to those taxes which have been disallowed.